THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. SPENCER BROWN, Plaintiff in Error.

*Opinion filed June 16, 1926.*

1. CRIMINAL LAW—*separate verdicts may be returned as to joint defendants.* Where several defendants are jointly indicted and tried jointly the court may allow the jury to return separate verdicts as to each defendant.

2. SAME—*when a defendant may be convicted on testimony of accomplices.* A defendant charged with receiving stolen property may be convicted on the testimony of several accomplices where such testimony harmonizes, is not shown to have been obtained by the prosecution on any promises of immunity or leniency and is denied only by the defendant, and where the circumstances show guilty knowledge on the part of the defendant.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

SAMUEL BLOCK, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and FRANK R. EAGLETON, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Spencer Brown, plaintiff in error, (sometimes called Dr. Williams,) and Frederick E. Frain, Howard P. Blackford, Thor. A. Wassburg, Julian C. Ryer, Herbert Hanna, Graham B. McGill and Frank Miller, were jointly indicted in the criminal court of Cook county for receiving stolen property for their own gain knowing it to be stolen property and to prevent the owners of the property from again possessing it. The property described in the indictment was mortgages, bonds, stock certificates and jewelry alleged to belong to Caroline Ehrhardt, Lydia Ehrhardt, Jessie Haberkamp, Agnes Harder and Bertha Harder. None of the indicted

persons except plaintiff in error, Miller and Hanna were placed on trial. At the conclusion of the People's testimony the State's attorney *nolled* the indictment as to Hanna and by permission of the court called Hanna as a witness. Separate verdicts were returned as to Brown and Miller, finding each of them guilty of receiving stolen property knowing the same to be stolen, for the defendants' own gain and to prevent the owner from again possessing the same, "in manner and form as charged in the indictment," and the value of the property so received was found to be $24,500. Motions for a new trial and in arrest of judgment were overruled and they were sentenced to the penitentiary for an indeterminate term. Brown and Miller prosecuted separate writs of error to this court, this writ of error being sued out by Brown.

The record in the two cases is identical, and the writ of error sued out by Miller was considered by this court in *People* v. *Miller,* 315 Ill. 411, and the evidence, in so far as it applied to Miller, is also applicable in this case as to the defendant Brown. We refer to the facts stated by this court in the *Miller case,* which are also facts in this case, and will not be here repeated but simply supplemented by the additional facts in the record which are also applicable to this case against Brown. The further evidence of Graham B. McGill is to the effect that about the middle of October, 1923, the defendant Spencer Brown (referred to by the witness as Dr. Brown) came to his office and told him that he had some bonds for sale. He told Dr. Brown to get a list of his bonds and he would see what he could do with them. Dr. Brown came to his office next day and brought a list of about $87,000 worth of various bonds, in denominations of $1000, $500 and $100 bonds. Brown entered into an agreement with him whereby McGill was to retain ten per cent of the proceeds of the sale of the bonds and return fifty-five per cent thereof to Brown, the remainder to be paid to Wassburg for the disposition and sale of the

321—40

bonds. Brown later brought the bonds to McGill at his office in a manilla paper bag or envelope, and they were of the face value of $24,500. McGill then made arrangements with Wassburg to handle the bonds, and Wassburg's disposition of them is fully set forth in the case against Miller above cited.

The testimony of Wassburg corroborates the evidence of McGill as to the facts aforesaid, his evidence being, in substance, the following: He met Dr. Brown on a Thursday, about the middle of October, 1923, at McGill's office, after he, Wassburg, had delivered the said bonds to Blackford and Frain for disposition and sale. McGill introduced Brown as Dr. Williams, and then asked Wassburg to explain to Dr. Williams why he did not return with the money or the bonds that McGill had put in his possession for sale. He made his explanation, and Brown told him that he did not like it, and that he should have brought back either the bonds or the money, and that he, Brown, would have to communicate with his people and find out if it was satisfactory to them. Brown reported later that it would be satisfactory if Wassburg would bring the money for the bonds not later than ten o'clock next day, and Wassburg promised to do so. Wassburg continued to meet Brown at McGill's office for the next few days, and both Brown and McGill were very anxious about the bonds and continued to tell Wassburg that he would either have to get the bonds back or the money or that he would get into plenty of trouble. On one of these occasions Brown told him, in the presence of McGill, that he would get "bumped off" if he did not return the bonds or the money for them. Brown and Miller, and the other man referred to as the "thin man," also made threats on another occasion of a similar nature to the threat of Dr. Brown. McGill also corroborated this testimony of Wassburg, and Herbert Hanna corroborated it to the extent that Brown and Wassburg and Miller and another stranger met together in McGill's office about the

time mentioned by Wassburg and McGill, and that on that day, or about that time, Brown told the witness, in answer to an inquiry as to what business he followed, that he sold diamond rings, or diamonds.

This evidence, if true, makes 'it clear that Brown had possession of the bonds that McGill delivered to Wassburg to sell for Brown, and that Wassburg delivered them to Blackford and Frain for the same purpose, and that Brown delivered them to McGill for sale for him.  Brown also admitted in his evidence that he met Wassburg at McGill's office about the times stated by McGill and Wassburg, and further stated that he left a diamond ring with McGill to sell for him.  He also stated that at one of the times that he was at McGill's office he saw two other men there, and that they and Wassburg and McGill had a very heated argument about some securities that somebody had taken from Wassburg, but he denied that Miller was one of these parties.  It also further appears that the burglary in which the securities had been stolen was published in the newspapers and also the fact that some of the securities had been sold, and Brown's name. was connected with some of the transactions.  When the police officers went to Brown's home, in Chicago, to arrest him, there was no response to their knock for admission.  One of the officers saw him go up the fire-escape from the lower part of the building and into his apartment above, and the officers followed him into his apartment and he manifested very great indignation at his being thus disturbed.  Brown admitted that he went up the fire-escape to his own apartment and took out a pane of glass in the kitchen window to make his entrance, and explained his conduct that he had been out of Chicago for two weeks at Antioch, where he had five cottages that he was renting, and had left his keys to his apartment, and for that reason bought a chisel and went up the fire-escape in the manner aforesaid in order to reach his apartment and while the officers were knocking for admission.

Plaintiff in error contends that the court erred in allowing evidence of other bonds than those described in the indictment as being among the bonds shown to have been possessed by him and put in McGill's hands for sale. One of these bonds was a bond owned by Georgiana Redick, who is not named in the indictment as one of the persons whose property was received by him. The testimony shows that this bond was one of the bonds taken from her safety box in the Werner Bros. vault at the time the other bonds found in his possession were taken. This evidence did tend to prove the receiving of stolen property belonging to Georgiana Redick, which crime was not charged in the indictment; but if it may be said that it was not strictly proper to make this proof, the admission of it was not reversible error. The evidence in this record clearly and conclusively shows that plaintiff in error was in possession not only of this bond of Georgiana Redick, but was in possession of a large number of the bonds alleged in the indictment to have been received by him, and that he knew they were stolen property and all stolen in the burglary aforesaid. The evidence in this record is to the effect that one-half of one per cent, or less, was the usual commission for the sale of that character of bonds in Chicago, and the large commission offered by plaintiff in error to McGill for the sale of these bonds, and the manner in which they were to be sold, clearly indicate that the defendant knew that they were "hot bonds," or stolen bonds, and that for that reason he did not sell the bonds directly himself to business concerns who are in the habit of buying them, but he used the method aforesaid for the purpose of concealing his connection with the bonds. His proposition for commission was so grossly large that all the bond sellers who came into possession of these bonds were clearly satisfied that they were stolen bonds because of the large commission offered for the disposition of them.

We have examined all the other contentions to the effect the court erred in admitting incompetent evidence, and are clearly of the opinion that the evidence was either competent or its admission so harmless that it was not prejudicial to the defendant.

There was no error committed by the court in allowing the jury to return separate verdicts as to each defendant tried. The law is well settled in this State that several defendants may be jointly indicted and jointly tried and the verdicts rendered be several. *People* v. *Thompson,* 274 Ill. 214.

It is true the several witnesses testifying against plaintiff in error, Blackford, Frain, Hanna, Wassburg and Mc-Gill, were accomplices in crime, and that the testimony of such witnesses is to be received by the court and jury and acted on with great caution. They are all criminals by their own admission, and no doubt every one of them testified with the hope that they would be more lightly dealt with by the State by making a complete confession and telling the truth concerning the whole matters charged against them. There is no evidence, however, that the prosecution has given them any sort of promise that they would be shielded from punishment or granted any special favors by their testifying. The evidence is to the contrary. This court has a number of times sustained convictions upon the uncorroborated testimony of accomplices. All of the State's witnesses testified in complete harmony with one another. The testimony is denied only by the defendant, and all the circumstances really tend to prove guilty knowledge of the crime and his guilt, as well as that of the other accomplices. There is no reason, therefore, that the evidence against this defendant should not be credited and his conviction sustained. *Juretich* v. *People,* 223 Ill. 484.

We have examined carefully the alleged misconduct of the assistant State's attorney against defendant and do not find any merit in the contention. Plaintiff in error was in-

dicted as Spencer Brown, "otherwise called Dr. Williams," and the State's attorney was fully warranted in referring to him as Dr. Williams in this case and also as Dr. Brown or Spencer Brown. The evidence shows that he allowed McGill to introduce him as Dr. Williams without correcting or criticising him in doing so.

We deem it proper to refer to one other contention, and that was the conduct of such attorney inquiring about a certain still found on the premises of plaintiff in error. The court promptly sustained an objection to this question, and the record also shows that the defendant's attorney first referred to this matter by questions asked by him, and the assistant State's attorney was in a measure excusable for asking such a question by reason of the fact that it was first referred to by the questions of the defendant's own attorneys.

Under the evidence in this record the jury would have not been warranted in returning a verdict of not guilty against this defendant, and there being no reversible error in the record the judgment is affirmed.

*Judgment affirmed.*