UNITED STATES, Appellee

v.

ALAN W. JENKINS, Private First Class,
U. S. Army, Appellant

1 USCMA 329, 3 CMR 63

LT. COL. George E. Mickel, U. S. Army, and 1ST LT. John D. Calamari, U. S. Army, for Appellant.
LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Petitioner, Alan W. Jenkins, was tried by general court-martial on June 19, 1951, for desertion in violation of the 58th Article of War, 10 USC § 1530. The court-martial returned a finding of guilty and sentenced him to be dishonorably discharged from the service, ·to forfeit all pay and allowances, and to be confined at hard labor for 5 years. The convening authority approved the finding and sentence, and. the board of review in the office of The Judge Advocate General of the Army affirmed. By order of the Secretary of the Army, the period of confinement was reduced to 2½ years. This Court, pursuant to the provisions of Article 67 (b) (2), Uniform Code of Military Justice, 50 USC § 654, granted his petition for review.

Petitioner was a rifleman in the 3rd Platoon, Company "I", 8th Cavalry Regiment. On or about March 6, 1951, the company occupied· a hill and it was being prepared for a defensive position. During the preparation the company personnel were receiving some intermittent artillery and mortar fire. Petitioner and another soldier had been sent out as a litter team to carry a wounded soldier from another company to the battalion aid station located in the rear area. Petitioner failed to return immediately to his company position, and the next morning he was seen in the rear area by the first sergeant, who was there in charge of a ration detail. The sergeant questioned petitioner as to his reasons for being in the rear area. The petitioner informed the sergeant that he was a member of a litter team which had come to the rear area the preceding afternoon or evening. Petitioner was then informed that he was to go forward with the sergeant and a ration carrying detail the following day. In accordance with the directions, the petitioner joined the party, and was told by the sergeant to take a position in the rear of the column ·to keep the Koreans closed up in case of fire from the enemy. Enroute to the forward area, the party stopped for a few minutes and the men were ·forced to scatter because of the proximity of artillery and mortar fire. Later, the group was reassembled and moved out again. Due to the distance between the head and the rear of the column the sergeant was unable to ascertain whether the petitioner was present when the column reformed, but when it arrived at the forward area he was not present. A search was promptly instituted, but he was not found. He remained absent, and his whereabouts were unknown, until he was apprehended in Pusan, Korea, some 12 days later. The facts and circumstances surrounding his apprehension were not disclosed.

Petitioner, for the most part, corroborated the prosecution evidence. In addition, he stated that when the artillery and mortar shells started to hit close to the party the members dispersed; that he started down a path leading to a stream bed; that he heard some one say "hit the dirt"; that the next thing he knew he was some distance behind the rear trains; and that he "lost his head" and kept on going. He claimed he was not continuously

absent for the 12-day period, but was not asked to elaborate on the details.

Our order granting the petition for review was general and specified no particular issues. The briefs and arguments of counsel suggest that the following issues are the only ones of importance: (1) Did the law officer err in his instruction to the court; (2) was the error prejudicial; and (3) was any error in the instructions waived by the failure of defense counsel to take an exception? We shall dispose of the first two issues in the order stated; but, in view of our holding on the second, a discussion of the third is rendered unnecessary.

The specification on which petitioner was tried and convicted alleged as follows:

"In that [petitioner] did, in the vicinity of Packtong-Ni Yongdu-Ri Area Korea on or about ▮▮▮▮▮▮ ▮ 7 March 1951, desert the service of the United States by absenting himself without leave from his organization, with intent to avoid hazardous duty, to wit; service with his unit in a combat area, and did remain absent in desertion until he was apprehended at Pusan, Korea, on or about 19 March 1951."

At the conclusion of the trial, the law officer, in instructing the members of the court-martial as to the elements of the offense stated:

"I wish to advise the court as to the elements of the offense charged in this case, and I refer the court to Paragraph 146a, Manual for Courts-Martial, 1949, page 198, at the bottom of the page. They are: (a) That the accused absented himself without leave from his unit, as alleged; (b) that his intent, at the time of absenting himself or at some time during his absence, to remain away permanently from such place, or to avoid hazardous duty; (c) that his absence was of a duration and was terminated as alleged; and (d) that the desertion was committed under the circumstances as alleged."

Petitioner contends that the law officer erred in including the words "to remain away permanently from such place" in the instruction for the reason that such intent is not an element of the offense charged in the specification. While our holdings in the cases of United States v. Williams (No 133) 1 USCMA 186, 2 CMR 92, February 21, 1952, and United States v. Hemp (No. 290) 1 USCMA 280, 3 CMR 14, April 8, 1952, decide the converse of this proposition, they, nevertheless, support petitioner's contention as to error. In those cases we held that where intent has been alleged in a desertion case, that element of the crime is limited by the particular intent charged, and the instructions must be narrowed to meet the allegation. The same rule is applicable in this instance, and failure to comply therewith is error.

Some arguments are advanced to the effect that the giving of the instruction can be sustained under the ▮▮▮▮▮▮ ▮ lesser included offense theory. Desertion with intent to remain away permanently is not a lesser included offense of desertion with intent to avoid hazardous duty. Though the latter may be considered the more cowardly, this is of little importance as Congress prescribed a number of variations in the intent with which the offense may be committed, and did not classify them as to gravity. We must, therefore, assume each different intent merely creates a separate arm of the same crime. This assumption negates any contention that one is greater or lesser than the other. Moreover, they all carry the same maximum penalty, are defined specifically as the same offense, and to all intents and purposes are on the same level. Accordingly, the arguments are neither persuasive nor sound.

Having determined that error is present, we are compelled to test the record for prejudice as Congress ▮▮▮▮▮▮ ▮ has decreed that we shall not reverse a finding of guilty for an error of law unless it prejudicially affects the substantial rights of petitioner. See Article 59(a), Uniform Code of Military Justice, 50 USC

331

§ 646. In each previous desertion case involving the same error in instructions we have analyzed the facts to determine whether the impact of the error would in any way influence the court to the prejudice of the accused. Because in the previous cases the evidence on each type of intent was substantial and almost in equipoise, we concluded it was probable that reasonable men might be led to render a finding on an element of intent not framed by the specification and that a fair risk of substantial prejudice was present. In this instance, we arrive at a contrary conclusion.

Accused was specifically charged with desertion by absenting himself without leave from his organization with the intent to avoid hazardous duty. This became the issue, and the only theory advanced by the prosecution and resisted by the accused. All of the evidence adduced at the trial, with two possible exceptions, was directed solely toward establishing the existence of that particular intent. The record shows that petitioner had gone to and remained in the rear area until he was ordered forward with a carrying party, which he fled at a time when it was first exposed to mortar and artillery fire. He testified to leaving the area when he came under fire, but attempted to explain his act by stating:

". . . I think I heard someone say hit the dirt, and the next thing I knew, I was way behind the rear trains. When I did think of what I had done, I just lost my head and kept on going."

When the taking of testimony was finished the picture of a soldier going absent with intent to avoid hazardous duty was clear and distinct. That evidence of other types of intent did not confuse the scene is suggested by the arguments of counsel, which are recorded. These establish that the only point of dispute between the parties was whether the accused was so confused that he could not form a specific intent to avoid hazardous duty.

We have previously mentioned that there were two items of evidence from which the court might infer an intent not to return. The first was the morning report entry, showing the absence without leave for 12 days, and the second was apprehension some 200 miles to the rear. Under military practice an extract copy of a morning report is an acceptable method of proving absence without authority, and this is a basic element of proof in all types of desertion. Unless the absence is much prolonged, which it was not in this case, the effect of this evidence would not favor one mental attitude over others. We conceive that if this item influenced the court, it would, because of the short period of time, militate against an inference of absence with intent not to return. Cast in the factual background of this case, the second element has a bare possibility of being seized upon to sustain an inference of intent not to return. But, to believe it had any effect would require us to assume that the court overlooked the obvious to grasp at one fact, which, when fitted together with other facts, might permit an inference of intent to remain away permanently.

While we desire to protect adequately the rights of an accused, we can not found prejudice on every inaccuracy in instructions. Technical errors and minor irregularities will creep into the trial of law suits and appellate courts can not administer justice fairly by failing to appreciate that the trial of criminal cases is a practical business, which can not be carried on with perfection. The best we can do is to place our stamp of disapproval on the error and then affirm only those cases where the irregularity does not touch the merits of the findings.

It would be idle to contend that we should do otherwise when Congress has spoken so plainly to the effect that a finding or sentence of a court-martial shall not be held incorrect on the grounds of an error of law unless the substantial rights of the accused are materially prejudiced. With that congressional mandate in mind, we place the evidence touching on the two intents on a scale to determine how reasonable men might weigh and evaluate that

which bears on each. Figuratively, we use this method to mark the path of departure between the holding in this case and United States v. Williams, supra, and United States v. Hemp, supra. In those cases the pleadings, evidence, arguments and the entire proceedings weighted almost equally on both issues of intent. Reasonable minds might have determined that there was substantial evidence on both sides of the scale, and might have chosen either as a base for an inference of intent. Not so here. This whole proceeding is weighted so overwhelmingly with evidence indicating an intent to avoid hazardous duty that a reasonable mind would have to ignore one side of the scale which was heavily loaded to choose the other which held barely a scintilla. Our understanding of human behavior leads us to believe that when the scales are so obviously out of balance reasonable minds would not be confused or misled as to which intent could be inferred from the facts.

We conclude that under the facts of this case the error did not materially affect the substantial rights of the accused. Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.