UNITED STATES, Appellee

v.

ERNEST VALENCIA, Private, U. S. Army, Appellant

1 USCMA 415, 4 CMR 7

No. 308

Decided June 3, 1952

LT. COL. George M. Thorpe, USA, and 1ST. LT. Michael E. McGarvey, USA, for Appellant.

LT. COL. Thayer Chapman, USA, and 1ST. LT. Eugene L. Grimm, USA, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Petitioner was convicted by general court-martial on August 6, 1951, of the offense of embezzlement. He was sentenced to a bad-conduct discharge, partial forfeiture of pay, and confinement for 2 years. Army reviewing authorities have upheld the findings and sentence on review. We granted petition for review in order to consider allegations by petitioner that there were, during the trial, improper references to prior convictions, and that the findings are not supported by sufficient evidence.

The first issue relates to an attempt by the trial counsel to elicit from Lieutenant Drake, a Government witness, testimony concerning other offenses committed by petitioner. The pertinent portion of the record is as follows:

"Q. While you were company commander, who signed the passes for the EM?

"A. I always signed the passes for them.

"Q. Who was signing passes from 1 May to 1 June?

DEFENSE COUNSEL: I object to this line of questioning as being incompetent and irrelevant to the issue at hand.

TRIAL COUNSEL: I'm going to the motive of the accused's intent in perpetration of the crime of taking money without intending to return it. If a person goes AWOL until he is picked up by the authorities. I believe that is relevant and material.

DEFENSE COUNSEL: Not conceding a criminal intent to steal or misappropriate money, I still request the counsel to make a bit more definite the proof of relevancy. I see no connection in the issuance of a pass and . . . .

TRIAL COUNSEL: He forged a pass to stay AWOL in Yokohama

. . . .

LAW OFFICER: Objection by the defense sustained. The fact that

**417**

the accused possibly stayed away from his organization for an extended period of time is immaterial.

. . . . . .

"Q. As company commander of H Company, at that time, Lt. Drake, what official determation as to the status of the accused did you have?

DEFENSE COUNSEL: I object to that question.

LAW OFFICER: Sustained.

TRIAL COUNSEL: From the period of 11 May to 29 May, what was the status of the accused?

LAW OFFICER: You have asked that question before and I sustained an objection by the defense.

"Q. Lt. Drake, I hand you this document marked Prosecution Exhibit No. 1 for identification. What is this document?

"A. It's an extract copy of a morning report, Company H, 224th Infantry Regiment.

"Q. How do you know that is an extract copy of a morning report, Company H, 224th Infantry Regiment?

"A. It is for 11 June, signed by myself.

TRIAL COUNSEL: Prosecution will offer in evidence Prosecution Exhibit No. 1 for identification to be introduced as evidence as Prosecution Exhibit No. 1.

DEFENSE COUNSEL: The defense objects to this document as being irrelevant to the issue at hand.

LAW OFFICER: Objection sustained. Prosecution Exhibit No. 1 will not be entered into evidence."

The record is clear that no proof of other crime was ever received in evidence. Timely defense objections were sustained. The error, if any, lies solely in the questions and statements of the trial counsel. Evaluation, therefore, requires assessment of the limitations to be placed on the conduct of the trial counsel.

We have no doubt of the fundamental impropriety of the trial counsel using his questions solely as a vehicle to prejudice the court against the accused. He is representative, not of a party to ordinary civil litigation, but of the sovereign state. It is his primary duty to see that justice is done. Berger v. United States, 295 US 78, 89, 79 L ed 1314, 1321, 55 S Ct 629. We have no desire to quell the natural desire of counsel to win a case with which he is associated. However, in the case of the trial counsel, this quite commendable zeal must be tempered with a realization of his responsibility for insuring a fair and impartial trial, conducted in accordance with proper legal procedures. This duty has a peculiar significance in the conduct of court-martial trials, in view of the historical status of the "trial judge advocate" as the legal representative of both the accused and the Government. Winthrop, Military Law and Precedents, 2d ed., 1920 Reprint, p 194.

The restrictions imposed upon Government counsel by virtue of his duty cannot, of course, be so strictly applied as to cause reversal of every case wherein he takes a step which results in the sustaining of a defense objection. Trial counsel is entitled to try a case as he sees it, and it would be ridiculous to argue that he is guilty of misconduct in every instance where an offer of evidence or the answer to a question is excluded by the law officer. Mistakes of judgment as to the law often occur, and such mistakes do not show an intention to deliberately flout established law in order to persuade the court to convict. The test to be applied must, therefore, have two branches. First, does the conduct indicate an intent to deliberately disregard the rules of evidence in order to influence the court, and, second, could the improper remarks have reasonably affected the court's deliberations on the findings and sentence. Or, to put it another way, we should reverse only for prejudicial misconduct on the part of the trial counsel. A mere error of judgment will not reach the level of misconduct; the erroneous statement or question may be such as to carry no prejudicial effect; and even if both of these tests are satisfied, there

may be convincing evidence of guilt, which would also negate the effect of prejudice. See United States v. Sapp, (No 14), 1 USCMA 100, 2 CMR 6, decided January 9, 1952. These precise concepts have been applied by the Federal courts in the area under consideration. United States v. Levi, 177 F2d 827, (CA7th Cir); Berger v. United States, supra; United States v. Socony-Vacuum Oil Co., 310 US 150, 84 L ed 1129, 60 S Ct 811; see Corti v. Cooney, 191 Wis 464, 211 NW 274.

Our first inquiry must, therefore, be whether the statements and questions of trial counsel here may ▮ be characterized as misconduct. If the effort toward proof constituted only a mistake in judgment, then we should not condemn to the point of considering reversal. The questions and statement in issue relate to other offenses committed by the accused. Generally, evidence of prior crime is considered to be highly prejudicial since it produces an impression that an accused should be found guilty of the instant crime because he has, in the past, demonstrated a criminal tendency. See United States v. Yerger, (No 122), 1 USCMA 288, 3 CMR 22, decided April 7, 1952. There are, however, numerous exceptions to this broad rule of inadmissibility. Manual for Courts-Martial, 1951, paragraph 138*g*; Wigmore, Evidence, 3d ed § 58. Included among the exceptions is evidence of such prior crime as tends to show "guilty knowledge or intent." Manual for Courts-Martial, 1951, supra. This is, obviously, a rather broad category. Here, the crimes involved were absence without leave and forging a pass in order to effectuate the absence. It is urged by Government counsel that this evidence had a direct bearing on the charge of larceny, in the form of embezzlement, for which the accused was on trial. The theory advanced is that absence without leave from the military community by one entrusted with funds is analogous to the situation where a civilian, having taken property entrusted to him, flees the community in which he resided. In the latter case, such evidence has been held to tend to show an intent to convert the property in question. See Dobbins v. United States, 157 F2d 257, (CA, DC Cir). If evidence of absence without leave is relevant for a similar purpose in this case, it would not be material that it constitutes proof of other crime. If proof is admissible for a legitimate purpose, the fact that it may also tend to be inflammatory does not require exclusion. United States v. Bartholomew, (No 166), 1 USCMA 307, 3 CMR 41, decided April 16, 1952; Luteran v. United States, 93 F2d 395 (CA8th Cir); see Wigmore, Evidence, 3d ed § 305. Without expressly deciding the issue of admissibility involved in the Government claim, we may safely say that the argument has merit. We cannot say that an effort to prove this prior crime constituted more than a possible mistake of judgment, even assuming the correctness of the law officer's ruling excluding the evidence. It should be emphasized again that we are not here confronted with a situation where proof of such prior crime was received in evidence. We say only that it is not unreasonable for trial counsel to have concluded that the rules of evidence permitted him to elicit testimony concerning the prior offenses. There is nothing in the record or in the nature of the offenses which would indicate a deliberate flouting of the rules of evidence in order to prejudice the court against the accused. It is our conclusion, therefore, that trial counsel was not guilty of misconduct.

However, even if we assume that the questions and statement constituted misconduct, it is still necessary ▮ sary for us to assess prejudice. It is true, as noted above, that proof of prior crime must always have a tendency to prejudice the court against the accused. However, if evidence of guilt is overwhelming or clear and convincing, then even certain improper conduct of the trial counsel may not be deemed prejudicial. Uniform Code of Military Justice, Article 59(*a*), 50 USC § 646; United States v. Levi, supra; see Kotteakos v. United States, 328 US 750, 90 L ed 1557, 66 S Ct 1239. Determination of this issue involves, a fortiori, disposition of the defense contention that there is insuf-

**419**

ficient evidence to support the findings.

Although petitioner was charged with larceny, the evidence shows commission of the crime of embezzlement. "In military law former distinctions between larceny and embezzlement do not exist." Manual for Courts-Martial, 1949, paragraph 180g. Embezzlement may be defined as the ■ fraudulent appropriation of property by a person to whom it has been entrusted or into whose hands it has lawfully come. Moore v. United States, 160 US 268, 40 L ed 422, 16 S Ct 294. Since the person has the property lawfully, by definition, the gravamen of the offense is the intent to convert the property to the possessor's own use. Hancey v. United States, 108 F2d 835 (CA10th Cir).

The evidence of record established the following account of the circumstances surrounding the alleged embezzlement. On ■ leged embezzlement. On May 15, 1951, the accused solicited money from members of his command saying that he was going to Yokohama and would buy them anything that they wanted. The accused was given money to buy specific items by the following people in the amounts stated after their names: Pfc George E. Dorsey, $4.00; Cpl Edgar D. Elam, $1.05; Cpl Marshall Joyce, $1.00; Sfc Willis L. Keys, $85.00; Cpl Richard W. Kuhn, $1.05; Cpl Robert W. Kuhn, $1.05; Pfc Edward F. Krug, $2.00; Pfc E. E. Nelson, $2.00; Sgt Ross H. Smith, $35.00; Pfc A. B. Mori, $10.00; Cpl C. P. Schnell, $11.50, or an over-all total of $153.65. The accused was absent from the organization until May 30, 1951, and when he returned he had neither the money above-mentioned nor the items that he was to purchase, in his possession. He stated to his company commander, Lt. Thomas A. Drake, that he had purchased the items and that they were checked in a locker at the Yokohama Service Club and that he had not been able to check them out before being returned to the company. Lt. Drake went to Yokohama and visited the service club. He searched the Checking Lockers thoroughly for the items allegedly checked by the accused but was unable to find any trace of them. The accused had not returned, at the date of the trial, the money which he had received nor had he delivered, at the date of the trial, any of the items he was to have purchased. Sergeant First Class Donald E. Grunwald also testified that he saw the accused in Yokohama about the 20th of May 1951, and asked the accused about the items that he was to purchase and the accused said that he had bought them and had them checked at the Service Club. Sergeant Grunwald offered to take the items back to Camp but the accused said that he did not have time to check them out of the club, which at that time was only one-half of a block away from where Sergeant Grunwald and the petitioner were talking. The accused, after having been advised of his rights by the law officer, elected to testify under oath. He testified in substance as follows: "At the time that I went to Yokohama to visit the hospital I had approximately $35.00 of my own money, which included $10.00 that I had borrowed. I was broke when I returned to camp."

The evidence, as set out above, makes it clear that (1) money was entrusted to petitioner by several soldiers for specific purchases; (2) the items to be purchased were not brought back to the soldiers; and (3) the money was not refunded. Although the accused took the stand to testify in his own behalf, he made no effort to explain what had happened to the money entrusted to him. In the absence of such an explanation, the law allows the court to infer that petitioner was guilty of larceny. "It may be presumed that one who has assumed the custody of the property of another has stolen such property if he does not or cannot account for or deliver it at the time of accounting or delivery is required." Manual for Courts-Martial, United States, 1951, Paragraph 138a.

It is, however, contended by defense that proof of a specific demand is necessary to sustain a conviction ■ for larceny in the form of embezzlement. There is support for this contention in the decisions of some jurisdictions. See People v. Wilde, 42 Cal App2d 482, 109 P2d 415

(1941); State v. Evans, 143 Kan 29, 53 P2d 789. However, in Dobbins v. United States, supra, this theory was expressly rejected. The court there states:

". . . It has been repeatedly held that a demand and refusal to pay over may be strong evidence going to make out the crime, but that such a showing is not fundamentally necessary where there is other convincing proof to support the conviction (citing cases).

"In such cases as the one before the court the test as to the necessity for demand would appear to be not whether the funds were acquired voluntarily, but rather, whether there is a fixed time for accounting, at which time the accused defaulted, or some other convincing proof to uphold the charge of wrongful conversion. Here there is considerable question as to the weight which can be attached to much of the government's evidence, particularly that relating to the financial condition of the defendant. However, it was shown that at the times set for accounting to the Auditor's Office the defendant caused to be filed fraudulent reports. This highly significant fact, coupled with the circumstances surrounding the defendant's departure from the city, when it appears that he had every reason to know that an examination of the account was in order, was ample, we think, to dispel any reasonable doubt concerning his guilt that might have been entertained by the jury. . . ."

Here, the condition under which petitioner obtained the money was that he would make specific purchases in Yokohama. Upon his return, the logical time to either refund the money or deliver the items purchased, he did neither. Instead, as to the location of the items, he told a story which was shown to be false. It is significant that petitioner made no effort to repeat this story while testifying in his own behalf. These circumstances provide convincing proof of wrongful conversion. Proof of specific demand is, therefore, unnecessary under the test established in Dobbins v. United States, supra.

It follows from what we have said above that there is substantial evidence to support the conviction. Further, the evidence is clear and convincing. Therefore, even if the statements of trial counsel in relation to other crime constituted misconduct, an over-all view of the case indicates that it did not result in substantial prejudice to petitioner. The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.