UNITED STATES, Appellee

v.

JAMES JOHNSON, Private E–2, U. S. Army, Appellant

3 USCMA 447, 13 CMR 3

No. 2363

Decided December 4, 1953

LT COL Edgar R. Minnich, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, LT COL Thayer Chapman, U. S. Army, 1ST LT Ezra B. Jones, Jr., U. S. Army, 1ST LT Richard L. Brown, U. S. Army, and 1ST LT Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

After trial by general court-martial in Germany on August 21, 1952, later review by the convening authority, and a review by a board of review, the accused stands convicted of one specification of unauthorized absence in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680; a breach of arrest in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728; and a larceny in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. As approved, the sentence imposed upon him includes a dishonorable discharge and confinement at hard labor for nine months. We granted the accused's petition for review on the following issues:

"1. Whether the record shows the offering or introduction of inadmissible evidence, indicating the commission of offenses not charged, to the prejudice of the accused.

"2. Whether the instructions of the law officer on Charge IV were sufficient."

On July 3, 1952, pending charges of a violation of the Code, the accused was

**449**

placed under arrest by his commanding officer. The limits of his arrest were his room, the wash room, and the dining hall. On July 9, 1952, as a result of information brought to his attention, the commanding officer, accompanied by his first sergeant, and a Sergeant Forside, went to the accused's room to conduct a search of the accused's effects. The accused was present. Upon order he unlocked his wall locker. The commanding officer searched through the locker, and on the upper shelf, next to some toilet articles, he found a number of items. One of these was a brown leather wallet bearing an inscription "Morgan State F. S. 4973."

At the trial the wallet was identified by Sergeant Spencer Forside as his wallet. The initials thereon were his and the numbers were the last four digits of his Army serial number. The circumstances under which the wallet was missed were described as follows: The late afternoon of July 5, a Saturday, was hot. Forside moved his bed out of his room and into the corridor. He placed his jacket on his roommate's bed, which remained in the room, and put his wallet underneath the jacket. His roommate was on pass. He then went to sleep in the hallway at about 4:30 p.m. At approximately 9:00 p.m. he awoke and discovered that his wallet was gone.

The wallet contained approximately $18.00 in MPC's, 20 Deutsche Marks, Forside's identification card, his EUCOM post exchange ration card, a pass for the period of July 5 to July 17, a driver's license, some Korean shoulder insignia, and several soldier deposit receipts. Most of these items were the subject matter of the larceny of Charge IV. However, when found in the accused's locker, the wallet contained only a Korean shoulder patch and a ration card bearing the name of a Private Albert L. Johnson. The attempted identification of the card and that of another article found in the locker form part of the accused's first assignment of error. They came into the record on direct examination of the accused's commanding officer as follows:

"Q. I hand you herewith Prosecution Exhibit 3 for identification and ask you if you recognize that?

A. I do, this is the field ration permit.

"Q. In whose name?

A. It is in the name of Albert L. Johnson, Private.

"Q. Is that the accused?

A. That is not the accused.

"Q. Where did you find that field ration permit?

A. In the wall locker of the accused.

"Q. I show you herewith Prosecution Exhibit 4 for identification and ask you to examine that and tell me whether you recognize it?

A. I do, it is an Armed Forces of the United States Identification Card.

"Q. In whose name?

A. Smith, Clinton J., Private.

"Q. Have you seen that before?

A. Yes, also in the wall locker of Private Johnson.

"LO. Lieutenant Tucker, I wonder on this ID card and ration card, what is the purpose of having them for identification?

TC. The Charge is stealing of one ID card of some value.

"LO. That would be the property of Master Sergeant Forside?

TC. Yes, we will withdraw the offer of Prosecution Exhibits 3 and 4 for identification at this time."

Other testimony of the search came from the first sergeant. Since a portion of that testimony is also included in the first assignment of error, we set out below the applicable part:

"Q. On 9 July was Johnson still in arrest in quarters?

A. Yes, sir.

"Q. Did he come to your attention again on that date?

A. Yes, sir.

"Q. In what way?

A. We had been to a meeting of the battalion—

"Q. Don't tell us what was said at the meeting. Tell us what you did as a result of what was said at the meeting.

A. The company commander, Sergeant Forside and I went to Private Johnson's room. The company commander told Private Johnson to open

his wall locker and foot locker, that he wanted to search them for some items that was lost. He went into Private Johnson's room and opened his wall locker and the company commander searched in there and brought out a wallet and a hypodermic needle.

"Q. Do not testify as to the items you got out, other than the wallet. In other words you got a wallet and from whose wall locker did you get it?

A. The wallet came out of Private Johnson's wall locker.

"LO. The court is instructed to disregard that portion of the answer which has to do with the needle."

The final segment of the first claim of error is a statement by the commanding officer that accused was to be expelled from a service school "on more than one count of hooking school." This information was volunteered in an unresponsive answer to a question by a court member. The law officer immediately interrupted the witness, and strongly admonished the court to disregard the testimony.

The accused testified in his own behalf with respect to the larceny charge. He denied that he stole the wallet, and accounted for his possession by saying that he found it on July 5. On that day he was in a "restricted" status; he was, therefore, asked by other members of his platoon, who were then on guard duty, to clean the room. He did so and upon going down to the garbage can to empty the waste basket he "picked up" the wallet. It contained a Korean patch and a pass. He took the wallet up to his room and threw it into the locker. Apart from the patch and pass, he found nothing in the wallet, and he took nothing from it. That night he went "off the Kaserne." On cross-examination, he admitted that the pass bore the name of Sergeant Forside. However, he did not inform Sergeant Forside that he had found the wallet because he was not asked, and since he was restricted he couldn't leave the area.

At the close of the case, the law officer fully instructed the court on the elements of the offenses charged. The instructions were concluded with the following statement:

"Now in this trial, Gentlemen, inadvertently there were certain inadmissible evidences brought in and the law officer desires, perhaps unnecessarily, to point out to the court that we must in all trials exercise the utmost fairmindedness; that the possession of certain items by the accused may be innocent and we cannot draw any inference one way or another as to the inadmissible evidence which was brought out here in court and which the court has previously been cautioned against. The court will be closed."

Appellant urges that prejudicial error resulted from the three references to other misconduct of the accused. In United States v. Yerger, 1 USCMA 288, 3 CMR 22, decided April 7, 1952, we noted that, with certain exceptions, it has long been the established rule that evidence of offenses other than those charged is generally inadmissible. But here, as in United States v. Valencia, 1 USCMA 415, 4 CMR 7, decided June 3, 1952, no proof of other crimes was actually received in evidence. The ration card of Albert L. Johnson and the identification card of Smith, which were found with the wallet, were withdrawn; the "hooking school" testimony was immediately ordered stricken by the law officer; and finally, the testimony of the discovery of a hypodermic needle in accused's locker was also ordered stricken from the record. Thus, the issue is narrowed to a bipartite consideration of whether the conduct of trial counsel constituted a deliberate flouting of the rules of evidence so as to deprive the accused of a fair trial, United States v. Valencia, supra, and to whether the statements were so prejudicial that, notwithstanding the exclusionary and admonitory rulings of the law officer, the effect of said statements could not be erased from the minds of the court members.

In United States v. Jenkins, 1 USCMA 329, 3 CMR 63, decided April 21, 1952, we said that the trial of a case is "a

practical business, which cannot be carried on with perfection." The role of trial counsel in that business is not that of the partisan advocate, but, rather, his primary duty, as a representative of the Government, is to see that justice is done. United States v. Valencia, supra. To that end, he must not attempt to get before the court-martial evidence which he knows to be inadmissible. People v. Black, 317 Ill 603, 148 NE 281 (1925). When inadmissible evidence is offered by trial counsel, the touchstone of a claim of misconduct is whether his conduct shows a deliberate disregard of the rules of evidence in order to influence the court or whether his effort was only the result of a mistake of judgment. United States v. Valencia, supra. No definitive line of demarcation can be laid down so as to separate the excusable error from the deliberate attempt to prejudice the accused. Necessarily each case must depend upon its own facts. People v. Collins, 50 Cal App 2d 281, 123 P2d 43 (1942).

Applying the test of good faith to trial counsel's attempt to identify the cards found in the accused's locker, we conclude that he did not offer them for the purpose of suggesting to the court that the accused had committed other larcenies. The ration card bearing Private Albert L. Johnson's name was found in the wallet; but that card was not in the wallet when it was taken from the owner's room. It would not be unreasonable to conclude that the presence of the card would tend to prove an act of use or ownership by the accused with intent to appropriate the wallet either temporarily or permanently. As evidence of intent, it would come within one of the recognized exceptions to the rule excluding evidence of offenses other than those charged. United States v. Jones, 2 USCMA 80, 6 CMR 80, decided December 17, 1952. Moreover, we cannot ignore the likelihood that trial counsel reasonably might have believed that it was proper to introduce evidence of all articles discovered with the wallet as part of the surrounding

circumstances. Cf. United States v. Penn, 115 F2d 672 (CA 7th Cir) (1940); State v. Groos, 110 Conn 403, 148 Atl 350 (1930).

For our purposes, we need not inquire whether the items offered in this case were, in fact, admissible. Suffice it to say, we do not regard it as prejudicial misconduct for trial counsel to offer evidence of doubtful competency; he cannot know that such evidence is inadmissible until it is offered and passed upon by the law officer. State v. Hahn, 5 Ohio Supp 368, affm'd 59 Ohio App 178, 17 NE2d 392, app dism'd 133 Ohio St 440, 14 NE2d 354; see also State v. Boyer, 342 Mo 64, 112 SW2d 575. Consequently, we find no error in trial counsel's conduct in connection with the offered exhibits. People v. Brown, 321 Ill 624, 152 NE 520; State v. Boyer, supra.

Turning to the other references of possible misconduct by the accused, the record shows that each was made by a witness in an unresponsive answer to a question which could not reasonably be said to be designed to elicit the particular information. In fact, the question which produced the information of accused's "hooking school" was asked by a court member. Accordingly, neither statement can be attributed to a deliberate plan on the part of trial counsel to prejudice the accused. Possible prejudice resulting from the disclosures must therefore rest upon a different basis.

The statements that accused "played hooky" from school and that he had a hypodermic needle in his locker were specifically stricken from the record by the law officer; on each occasion the court was strongly admonished to disregard the testimony. Thus, a reversal would have to be based upon the fact that these statements were so highly prejudicial that the court could not put them out of its mind in reaching its findings of guilty or in passing upon the sentence. State v. Manning, 67 RI 343, 23 A2d 754; Magee v. State, 198 Miss 642, 22 So2d 245. A criminal

452

prosecution should not be defeated by gratuitous comments of a too-willing witness, but neither can an accused be deprived of his rights and his liberty because of improper influences upon the court.

Under some circumstances, an instruction to disregard the testimony of a witness disclosing an offense not charged may not overcome the harmful effect of the statement. Boyen v. United States, 132 F2d 12 (CA DC Cir) (1942). In a different factual setting, the instruction may be deemed entirely adequate to obviate any improper influence upon the findings and the sentence. Marsh v. United States, 82 F2d 703 (CA 3d Cir) (1936); Cuomo v. United States, 231 Fed 116 (CA 2d Cir) (1916). The test is whether it can be said that the mere mention of other offenses, under the circumstances of the particular case, actually influenced the verdict, notwithstanding the admonition of the law officer to disregard the statement. Cf. United States v. O'Briski, 2 USCMA 361, 8 CMR 161, decided March 30, 1953. No incident of this nature can be evaluated with mathematical nicety.

The evidence of accused's guilt of larceny is so substantial that we conclude the court was not influenced by the excluded statements of other wrongdoing. The stolen wallet was discovered in the accused's wall locker. He says he found it four days before, but his own explanation casts grave doubt upon the truth of his story. Thus, he testified that when he found the wallet, it contained Sergeant Forside's pass; he also stated that he took nothing from the wallet. Yet, when found, not only was Forside's pass missing, but the wallet contained a ration card that was not in it when it was stolen. Further tenuousness appears in the accused's excuse that he made no effort to return the wallet to its owner because he was not asked to.

Although we have not summarized it, the evidence relating to the offenses of unauthorized absence and breach of arrest was also clear and compelling.

Hence, as much as we have probed the record for possible prejudice resulting from the excluded statements of other misconduct of the accused, we can find none. United States v. Curzio, 179 F2d 380, 381 (CA 3d Cir) (1950). We have considered each instance of alleged impropriety singly, and we have considered them in the aggregate, but the net result is the same. We believe that the accused's conviction of, and sentence for, the offenses charged were supported by ample and persuasive evidence free from any improper influence.

We turn now to the claim of error in the instructions of the law officer on the larceny charge. After a detailed statement of the elements of the offense of larceny and those of wrongful appropriation, the law officer said:

"Now as the court will note, the accused was found and has admitted being in possession of part of the goods alleged to have been stolen and the court, if it so finds, may as a matter of law justify an inference of the theft of the whole items which Sergeant Forside has described as having been taken under the circumstances he outlined. However, in this connection and in connection also with the morning report, that those are just warrantable inferences which the court may or may not draw as it sees fit. In other words the court is not bound by any prima facie evidence and may refuse to accept it and may say that the prima facie evidence does not outweigh the presumption of innocence."

The appellant recognizes the general rule that the exclusive and unexplained possession of recently stolen property will justify an inference that the possessor is the thief, Wigmore, Evidence, 3d ed, §§ 152, 2513; but he maintains that under the instruction in question the court was permitted to believe that, irrespective of the accused's explanation, the bare possession of recently stolen goods was sufficient for a conviction of larceny. However, fairly construed, the instruction had no such meaning. Its purpose was to inform the court that it could properly find

**453**

the accused guilty of stealing all of the property rather than that part only which was found in his possession. That such was the meaning of the instruction is clear from the reference to the theft of the *"whole items* which Sergeant Forside has *described as having been taken under the circumstances he outlined."* (Emphasis supplied.)

Read as a whole, the instruction does not impress us as a direction to the court to ignore the accused's explanation of his possession of the stolen wallet. If the accused himself had any doubt as to the law officer's ▮▮▮ meaning, it was his duty to request clarifying instructions, United States v. Long, 2 USCMA 45, 6 CMR 45, decided October 17, 1952; United States v. Jenkins, 1 USCMA 329, 3 CMR 63, decided April 21, 1952. Of course, if the instruction was erroneous or misleading, defense counsel's failure to object would not necessarily be fatal, but certainly the accused's own evaluation of the instruction at the trial level may be considered in weighing its significance on appeal. See Petrilli v. United States, 129 F2d 101 (CA 8th Cir) (1942), cert den 317 US 657, 87 L ed 528, 63 S Ct 55. We are satisfied, from a careful reading of the instruction, and considering it in the light of all the evidence, that there was no reasonable probability that the court was misled in its determination of the accused's guilt or innocence.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.