UNITED STATES, Appellee,

v.

**Specialist Four Rodolfo Reyes CASTILLO, SSN 339–46–1230, United States Army, Appellant.**

**CM 436279.**

U. S. Army Court of Military Review.

21 Sept. 1978.

---

3. *See also* ABA Standards, The Prosecution Function, §§ 5.8 and 5.9 (1971).

Major Benjamin A. Sims, JAGC, and Captain James Recasner, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Lee D. Schinasi, JAGC, and Captain Stephen D. Smith, JAGC, were on the pleadings for appellee.

Before JONES, MITCHELL and De-FORD, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Judge:

What may be described metaphorically as a non-violent rebirth of the family feuding of the Hatfields and McCoys [1] of our Southern Highlands has brought to this Court a bitter controversy over the conduct of opposing counsel. Drawn into issue by the defendant's appeal from his conviction of attempted rape [2] are the pretrial activities and trial tactics of certain members of the defense and prosecution and the subsequent special findings by the trial judge regarding those activities.

After trial, but before the convening authority took action on the sentence, a special 39(a), 10 U.S.C. § 839(a) session was convened to investigate the allegations of prosecutor misconduct.[3]

The military judge who had presided at the original trial also presided at the special hearing. He made extensive special findings basically stating that the questioned behavior of the prosecutors was justified under the then existing circumstance and was not unethical. He found their behavior derived from pretrial acts of the defense staff which he found to be gross and unacceptable but not unethical.

In order to understand the opposing appellate arguments, it is necessary to recite in some detail the pretrial activities of certain members of the defense staff and the government prosecutors. *See United States v. Cooper*, 5 M.J. 850 (A.C.M.R.1978).

1. This struggle eventually involved, directly or indirectly, practically every inhabitant of Pike County, Kentucky and Logan County, West Virginia and resulted in at least sixty-five deaths and brought the governments of the two states to the brink of war.

2. This was in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880, for which the accused was sentenced by a court with members to a dishonorable discharge, total forfeitures, confinement at hard labor for

three years, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

3. This post-trial hearing, pursuant to Article 39(a) and paragraph 53, Manual for Courts-Martial, United States, 1969 (Revised edition), apparently was instigated by an ethics complaint against the assistant trial counsel by counsel for Specialist Cooper, appellant's co-accused. The trial counsel was later drawn into the ethics controversy.

Appellant Castillo and his co-accused Cooper were charged with attempted rape of Fraulein Baron, a German national, in Munich, Germany. More than a month prior to trial, appellant's counsel determined that further information should be gained regarding the prosecutrix who, although stating her occupation as governess, worked as a hostess at a sexually oriented bar. Since he was committed to go on temporary duty to Berlin, defense counsel instructed members of his staff to gather information regarding the prosecutrix and the nature of the duties of a hostess at the establishment of her employment, the Madam Bar in Munich.[4] A female civilian interpreter, a male legal clerk and a detailed male clerk with conversational German capabilities went to Munich to conduct the covert defense investigation. During at least two periods within the club, the group determined that sexually explicit films were shown and that the hostesses would accompany patrons into a curtained booth for the exorbitant purchase price of a bottle of champagne.[5] One hostess (not the prosecutrix) indicated sexual activity just short of intercourse occurred behind the curtains and was expected. One of the defense investigators asked the manager of the cabaret if the prosecutrix would be willing to go with him into a curtained booth and if she had ever done so in the past. He recalled at the post-trial hearing that he did not ask if she was available for sexual relations "in those terms."

Fraulein Baron, the prosecutrix, who was on duty at the bar recognized the female interpreter, realized that the three people from defense counsel's office were in concert and was convinced that she had been solicited for sexual relations. The following day she reported this to agents of the Army Criminal Investigation Detachment (CID) who in turn reported the complaint to the assistant government prosecutor.

As a result of the victim's report and his considered conclusion that no evidence detrimental to her character had been discovered, the assistant prosecutor wrote a letter concerning potential charges against defense counsel and one of the male investigators stemming from their covert investigation of the victim. This letter was intended as a joke, and a copy was placed in defense counsel's office mail box. A cover letter explaining that the allegations of conspiracy, solicitation and attempted adultery were meant to be a joke was sent to the senior defense counsel, Captain Schwender. The enlisted investigator was given a copy of the "joke letter" and was later informed that it was written in jest and not to be taken seriously. While still in Berlin, the defense counsel was informed by phone that the letter was a joke and he was again informed of that fact by his co-counsel upon his return to his unit.

Appellant places before us for resolution the following two assignments of error: (a) the actions of the assistant trial counsel in improperly harassing the defense so tainted the case that a new trial is required, and (b) the actions of the military judge present the appearance of partiality and bias to the extent that a new trial is required.

I

■ Alleging that certain pretrial activities of the assistant trial counsel had a "detrimental, harrassing, annoying and intimidating effect upon [trial] defense counsel and his staff," appellant contends his trial was tainted, and his conviction should be reversed. Specifically he refers to the so-called "joke letter." Government disagrees, and contends that even though the letter was not in good taste it had no prejudicial effect upon defense counsel, the trial proceedings, or the findings and sentence.

Our reading of the record convinces us that trial defense counsel maintained an aggressive, skillful and thorough defense of his client. His presentation was not only technically sound and fully developed, but it also bore the stamp of relentless pursuit of

---

4. A tawdry "invitation" described the Madam Bar as a "Striptease Cabaret" where "International Films" were shown.

5. For 280 Deutsch marks (approximately $115.00 at that time).

all matters perceived to be important to his side of the lawsuit. He impressed us with his grit, his gumption, and his demonstrated want of fear or intimidation in the court-room.[6] His verbal clash with the trial judge regarding alleged courtroom impro-priety graphically reflects this dogged de-termination. This is hardly the type of counsel who would be intimidated by the mere presence of another lawyer-officer of equal rank and comparable courtroom expe-rience.[7] In our view, the defense counsel's self-degrading introspection is undeserved, unfounded and unpersuasive.[8]

■ Assuming *arguendo* that the assist-ant prosecutor committed an ethical viola-tion in preparing and distributing the "joke letter," we do not find prejudice *per se.* As stated above, we do not find that the assist-ant prosecutor's actions intimidated the tri-al defense counsel. We must test also to determine whether it reasonably affected the court's deliberation on findings or sen-tence. Even if found to have some effect, convincing evidence of guilt may negate the otherwise prejudicial effect of an unethical practice. United States v. Seal, 27 C.M.R. 951 (A.F.B.R.1958); *United States v. Valen-cia,* 1 U.S.C.M.A. 415, 4 C.M.R. 7 (1952). The evidence of appellant's guilt is clear and convincing beyond a reasonable doubt. Two witnesses in an upstairs apartment heard screams for help. The distraught victim was examined and observed to have swelling, lacerations and bruises. The vivid details of the attack were instantaneously supplied by the victim. Therefore, we find the evidence of appellant's guilt to be com-pelling with no perceptible risk that the "joke letter" had any effect on the trial's outcome.

## II

■ Alleging that the military judge's findings at the conclusion of the post-trial hearing (paragraph 53, Manual for Courts-Martial, United States, 1969 (Revised edi-tion), presented indications of partiality and bias, appellant urges that he be granted a new trial. He bases his allegation on what he perceives to be the judge's ultimate de-termination of the defense staff's Madam Bar venture, namely that "the defense con-ducted a non-democratic investigation which gave Americans a black eye in view of the affected Germans and therefore all that precipitated therefrom was the fault of the defense."

On 11 and 12 May 1977, six weeks after appellant's conviction, the post-trial 39(a) proceedings were held pursuant to an order of the convening authority. The order di-rected the military judge to make findings on certain specifically submitted matters which alleged ethical violations, and "such other matters as may seem appropriate to the military judge." Eighteen issues were raised by counsel for both sides.

Our reading of the record and our over-all view of the proceedings indicate that the military judge's findings addressed the is-

---

6. "The most vital quality a soldier can possess is self-confidence, utter, complete and bump-tious." George Smith Patton, Jr. (1885–1945). *Letter to Cadet George S. Patton, III* [June 6, 1944].

7. Defense counsel, in his post-trial testimony, indicated he was intimidated to the extent that he avoided contact with assistant trial counsel and perhaps did not do all the pretrial investi-gation he desired. Since he alleges his client was denied the effective assistance of counsel, we feel this issue is before this Court and requires resolution.

8. An office memorandum signed 38 days after trial by Captain Schwender, chief defense counsel, is particularly illuminating. A perti-nent quote:

" . . . Since *any* degree of successful in-timidation of CPT (defense counsel) would reflect on his adequacy in past cases as well as his ability to further handle defense func-tions, I contacted him personally on 5 May 1977, to discuss the problem. [He] assured me unequivocally that he has *not* been intimi-dated. That only attempts were made to *try* to intimidate him. He stated that these at-tempts have not caused him to diminish his defense of any client, and he has defended each of his clients, fully, and completely. My observation of CPT (defense counsel) at work reinforce his statement. He does an extremely zealous job defending each of his clients, and it (sic) totally unintimidated by *anyone!*" (Emphasis in original)

sues presented by all parties and did not demonstrate any partiality or bias which might have served to taint the trial or subsequent proceedings. We believe that although certain words, phrases or concepts embodied within the judge's findings may seem to express opinion rather than findings of fact, those constitute nothing more than mere editorializing or judicial "poetic license" pursuant to the requested findings. The judge's liberal use of strong similes and other figures of speech does not, in our view, impeach his credibility as a fair and impartial jurist.

Finally, it should be remembered that the two proceedings are completely severable in time. The trial was completed more than a month before the post-trial article 39(a) hearing. Further, the two proceedings are distinguishable in relevant content. The paragraph 53d, MCM (Rev. ed.), hearing dealt with collateral matters which did not present any new evidence which cast substantial doubt on the propriety of the trial proceedings. We find that a new trial is not warranted.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge DeFORD concur.