UNITED STATES, Appellee

v

CARL A. SHAUGHNESSY, Private E–1, U. S. Army, Appellant

8 USCMA 416, 24 CMR 226

No. 9319

Decided November 15, 1957

*First Lieutenant Jerome H. Gerber* argued the cause for Appellant, Accused. With him on the brief were *Colonel James M. Scott, Colonel Walter J. Rankin,* and *First Lieutenant Bert M. Gross.*

*First Lieutenant Richard W. Young* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant William K. Davenport.*

## Opinion of the Court

HOMER FERGUSON, Judge:

We brought this case here to consider certain issues arising from the trial counsel's cross-examination of the accused and to review the correctness of the law officer's instructions. The accused was convicted of desertion for a period of approximately five months, terminated by apprehension. The evidence showed that just four days prior to the inception of the instant offense, the accused had been released from confinement where he had served a sentence pursuant to a conviction for absence without leave. The accused testified in his own behalf and offered as the reason for his absence the fact that his wife desperately needed an operation on her back and spine, and that because of her destitute condition it was necessary for him to return home and render all possible assistance. While at home he worked in order to earn enough money to send her to the hospital and to have the operation performed. He was apprehended by Federal Bureau of Investigation agents at the hospital where his wife was confined. He vigorously maintained that he had no intention to desert the service and that he had planned to surrender himself to military authorities upon his wife's release from the hospital. He estimated that his wife would have recovered "approximately two weeks after I was apprehended."

Trial counsel thereupon proceeded to cross-examine the accused and the very first questions propounded were these:

"Q. Private Shaughnessy, were you ever convicted of robbery?
A. No sir.
"Q. You have never been convicted of robbery?
A. Not that I can recall."

Defense counsel raised no objection to these questions at the time they were asked. At the completion of cross-examination, however, the law officer inquired whether defense counsel cared "to raise an objection at this time."

**417**

After some prompting by the law officer, the defense counsel "formally" objected. The law officer then instructed the court that the "type of question and the matter disclosed is improper." He admonished the court-martial "to disregard completely that question and answer as raised by the trial counsel," and further instructed that the question and answer be stricken from the record and "stricken from the minds of the members of this court." He concluded by again instructing the court "emphatically to completely disregard that question and answer." The trial counsel then sought "for the protection of the record" to append a document to the record of trial as an appellate exhibit. In the out-of-court conference that followed, the trial counsel introduced a document entitled "History of Accused," which contained a brief notation that the accused when fourteen years of age had been convicted of robbery and placed on probation for six months. Trial counsel offered the document to show that there had been no "bad faith involved" on his part in cross-examining the accused.

## I

The first issue on which review was granted concerns the trial counsel's cross-examination of the accused on the alleged juvenile conviction. The Government contends that such cross-examination was entirely proper and that furthermore the Manual for Courts-Martial, United States, 1951, draws no distinction based on the age of the witness when he committed the acts upon which his impeachment is sought. The defense, on the other hand, takes the position that the accused's juvenile derelictions are not the proper subject of cross-examination. An identical issue was recently considered in United States v Roark, 8 USCMA 279, 24 CMR 89, where it was held to be error to cross-examine an accused pertaining to a juvenile conviction. Our holding in that case is applicable here. We must next assess the prejudice.

Immediately following the trial counsel's cross-examination, the law officer, on his own initiative, clearly and forcefully instructed the court-martial to "completely disregard" the improper questioning. After this instruction had been given, the president of the court-martial asked the law officer about the accused's prior conviction for the offense of assault with a dangerous weapon which was properly admitted into evidence. The law officer advised the president that the instruction to disregard was only applicable to "the question propounded as to the conviction for robbery," and not to the evidence properly admitted concerning the assault charge. Furthermore, the document, upon which the trial counsel relied for his information, was never presented to the court. We have carefully scrutinized the entire record and find no evidence that the trial counsel acted in bad faith or that he deliberately flouted the rules of evidence so as to deprive the accused of a fair trial. The admissibility of evidence concerning juvenile convictions is a question of first impression before this Court. It therefore did not constitute an act of misconduct for the trial counsel to attempt to impeach the accused's credibility on the basis of the juvenile conviction.

In considering the effect of the law officer's cautionary instructions to disregard we advert to our own decision in United States v Johnson, 3 USCMA 447, 13 CMR 3, where we said that the test for determining whether an instruction is adequate to obviate any improper influence upon the findings and sentence is "whether it can be said that the mere mention of other offenses, under the circumstances of the particular case, actually influenced the verdict, notwithstanding the admonition of the law officer to disregard the statement." Under all the circumstances of the instant case we believe that the court-martial followed the law officer's instructions and disregarded the objectionable questioning and that the findings and sentence were free from any improper influence. United States v O'Briski, 2 USCMA 361, 8 CMR 161.

## II

The second issue presented on this

appeal relates to the trial counsel's cross-examination of the accused concerning a prior marriage. The defense invites our attention to the following questions and answers:

"Q. Your wife's name is Shirley, is that correct?
A. Yes sir.
"Q. Isn't it correct that you were married to Anne Shaughnessy on 3 January 1952?
A. Yes sir.
"Q. At Elizabeth, North Carolina?
A. Yes sir.
"Q. *And you have never been divorced or that marriage has never been annulled?*
A. Yes, it was annulled.
"Q. When?
A. Approximately March of 1953.
"Q. Where?
A. Fort George G. Meade, Maryland." [Emphasis supplied.]

It is argued on behalf of the accused that the italicized question by trial counsel was "flagrantly accusatory in nature," and grossly improper. The accused, however, by his answers clearly dispelled any implication that he was guilty of bigamy. Prior to this questioning a court member had asked the accused why he had made no attempt to take out an allotment in favor of his wife. The accused replied that he had been in confinement and that while there "you are a lost soul." Furthermore, he considered the best way to help his wife was "to go home and straighten things out the best I could." Trial counsel then inquired concerning the accused's previous marriage and whether the inability to procure an allotment in favor of his wife had been occasioned by his failure to discontinue the allotment in favor of his first wife. The accused, however, explicitly denied this and claimed that the allotment to his first wife had long since been discontinued. Trial counsel made no further effort to pursue this line of questioning.

Although there might be some doubt concerning the degree of ▆▆▆ ▆ relevancy of this questioning, we cannot say that such cross-examination was improper.

Cross-examination is to some extent exploratory in nature. To find error here, we would have to conclude that the trial counsel's questions were used solely as a vehicle to prejudice the accused. This we cannot do. In United States v Valencia, 1 USCMA 415, 4 CMR 7, we said that we would reverse "only for prejudicial misconduct on the part of the trial counsel." Viewed in the light most favorable to the accused, the questioning here involved constitutes no more than an error in judgment, which falls far below the level of misconduct. United States v Russell, 3 USCMA 696, 14 CMR 114.

III

The final issue concerns the correctness of the law officer's instructions. After fully instructing the court-martial on the elements of the offense charged and the lesser included offense, the effect of the accused's plea of guilty to the lesser included offense, and the question of circumstantial evidence on the accused's intent, the law officer gave the following additional instruction:

"Now in this connection, *in view of the fact that the court has before it the Manual for Courts-Martial, 1951, and the oral request of the defense,* the court is instructed that paragraph—within paragraph 164a (1), at page 311, Manual for Courts-Martial, the following appears:

'A prompt repentance and return, while material in extenuation, is no defense; and a purpose to return, provided a particular but uncertain event happens in the future, may be considered an intent to remain away permanently.'

"As concerns the quoted portion of that sentence, the court is advised that this is an inaccurate statement of the law, but in connection with this question, the court is advised that in addition the factors I have mentioned concerning the accused's intent not to remain away permanently, and bearing upon the accused's intent to return to the service, the defense offered evidence to indicate that the accused intended to return when and

**419**

if his wife had completed her operation and was well enough for him to return. On this point, the court is advised that the question of the true intent of the accused is a fact which the court must determine, and such evidence may be considered by the court in deciding this issue of the intent of the accused." [Emphasis supplied.]

At the conclusion of his instructions, the law officer inquired of defense counsel whether he had any objections to the instructions as given or additional instructions and the latter replied in the negative.

This case presents another example of the mischief which can result from the use of the Manual for Courts-Martial by the court members in their closed deliberations. In United States v Rushlow, 2 USCMA 641, 10 CMR 139, we held that a law officer's instruction in a desertion case that " 'A purpose to return, provided a particular but uncertain event happens in the future, may be considered as an intent to remain away permanently' " was erroneous since it in effect stated that a specific intent to remain absent permanently may be established by merely proving an intent to return as the latter is based on a contingency. The source of that particular instruction may be found in the Manual discussion of the offense of desertion. Paragraph 164*a*(1), Manual for Courts-Martial, supra. In discussing this Manual provision in the Rushlow case, supra, we said that:

"This particular sentence is inartfully drawn and should not be made the subject matter of the instruction."

From the quoted portion of the law officer's charge, we can infer that the defense counsel requested that the negative instruction be given. From this, the Government argues that the error, if any, was self-induced and that the accused may not be heard to complain. The use of negative instructions presents a highly unusual practice to say the least and is capable of creating much confusion and misunderstanding in the minds of the court members. Such instructions should not be used except in the most unusual circumstances. However, the reason for such instructions in the instant case may be traced directly to the court members' use of the Manual in their closed session deliberations. In United States v Boswell, 8 USCMA 145, 23 CMR 369, we said that it was "improper for court members to consult 'outside sources' for information on the law," and that the Manual was no different from any other legal authorities. More recently, in United States v Rinehart, supra, we again voiced our disapproval of the practice "which permits court members to rummage through a treatise on military law, such as the Manual, indiscriminately rejecting and applying a myriad of principles—judicial and otherwise—contained therein." One of the very reasons given in our Rinehart opinion—which takes on specific meaning when viewed in the light of the instant case—why such practice is objectionable is because "many of the passages contained therein [Manual] have been either expressly or impliedly invalidated by decisions of this Court." We there listed a number of decisions—including the Rushlow case, supra—which have invalidated specific provisions of the Manual.[1]

Here it is not unreasonable to assume that the court members in closed session would consult the Manual discussion of desertion. Had the Manual not accompanied the members into closed deliberations there would, of course, have been no reason for the law officer to give a negative instruction advising the court members to disregard a provision contained therein. Thus we have the anomalous situation of a law officer instructing a court to disregard and ignore something it shouldn't see in the first place. We need scarcely say that such a practice is strikingly unsatisfactory. The procedure followed placed the court-martial in a position

---

[1] For an additional list of Manual provisions which have been invalidated or substantially modified by decisions of this Court, see Feld, A Manual of Courts-Martial Practice and Appeal, Appendix I, page 164.

where it had to choose between reliance on the Manual, with its long and honored tradition in the military on the one hand, and compliance with the law officer's admonition on the other. The conflict was further heightened by the ill-advised statement by the law officer that the instruction to disregard was given at the "request of the defense." Any distinction between *sua sponte* instructions and requested instructions has little in law or logic to commend it. Both are intended to provide the legal framework for the court-martial's consideration of the evidence. The singling out of an instruction as originating with one side or the other tends to identify the correctness of the instruction with the case for that side. Cf. United States v Nash, 5 USCMA 550, 18 CMR 174. We need hardly say that if the court members are inclined to disbelieve the evidence presented on behalf of the side that requested the instruction, it would also be disinclined to accept the law advanced by that side especially where, as in the instant case, the requested instruction was at variance with the Manual. In such a setting, the law officer's instruction to disregard was insufficient to overcome the harmful effects of the court-martial's use of the Manual. United States v Johnson, 3 USCMA 447, 13 CMR 3; Boyer v United States, 132 F2d 12 (CA DC Cir) (1942).

The decision of the board of review is reversed, the record of trial is returned to The Judge Advocate General of the Army, and a rehearing is ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

My dissent goes only to that part of the Court's opinion which discusses the error arising out of the use of the Manual and the clarifying instruction. In addition to the rationale set out in my dissenting opinion in United States v Rinehart, 8 USCMA 402, 24 CMR 212, I suggest an additional reason to uphold my contention that the Court reaches the wrong result in this instance. Defense counsel in the case at bar requested the instruction as given by the law officer. In United States v Jones, 7 USCMA 623, 23 CMR 87, we held that an accused could not complain of an error induced by his counsel. That holding seems to me to be in direct conflict with the ruling announced in this case. I believe that the former rule announces good law and, accordingly, I would affirm the decision of the board of review.