UNITED STATES, Appellee

v

WILLIAM H. JONES, Corporal, U. S. Army, Appellant

10 USCMA 122, 27 CMR 196

No. 11,581

Decided January 9, 1959

*First Lieutenant Frank J. Lane, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Captain John F. Christensen.*

*First Lieutenant Frank J. McGee* argued the cause for Appellee, United States. With him on the brief were *Major Thomas J. Nichols* and *First Lieutenant Chester F. Relyea.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

I

The accused was tried by general court-martial in Korea upon specifications of premeditated murder, murder committed in the attempted perpetration of a felony, and of rape. He was acquitted of premeditated murder but found guilty of felony murder and rape, and was sentenced to a dishonorable discharge, total forfeitures and confinement at hard labor for life. The convening authority approved, but for reasons hereinafter set forth, a board of review reduced the finding of guilty

124

of felony murder to voluntary manslaughter. After reassessment for appropriateness, in light of the approved findings, the original sentence was affirmed by the board. We granted review to consider eight assigned errors which will be discussed in turn.

## II

The operative facts are as follows: On the morning of March 11, 1957, the accused and another enlisted man were on duty at a guard shack adjacent to the main entrance of their battalion area in Korea. The accused had been detailed to make a technical inspection of vehicles leaving the area. During the morning hours, he left his post and made two trips to a nearby village to obtain alcoholic beverages and, according to his testimony, he consumed several bottles of beer and approximately two-thirds of a "fifth" of gin. Sometime shortly after twelve noon, one PFC Burton reported to the post for duty and noticed a Korean man approaching the gate. The accused picked up a carbine and went out of the shack, stating an intent to warn the stranger that he was not permitted in the area. Accused spoke briefly with the Korean and then continued away from the shack, leaving the road and crossing a rice paddy, before disappearing from sight of the remaining sentry. Accused later explained that he had been attracted by noises coming from the direction of a nearby stream and, on approaching, saw two Korean women washing clothes. One of these women was found dead shortly thereafter. The other, a witness named Choi Son-Ni, testified at trial that when accused came on the scene, the two women feared they were trespassing in a prohibited area and immediately began to collect their belongings. The accused wasted no time in formalities, for he first kicked a bag of clothes into the stream and then indicated to the witness that she should unbutton her clothing. Choi Son-Ni retreated one or two steps, and the accused approached the victim, handling her in such a manner that she was thrown into the stream. He then seized the arm of the witness and attempted to throw her into the water as well, but she managed to reach the other side without falling. The victim by then had extricated herself from the stream, and the accused indicated that she should open her clothing, pointing his weapon at her chest and at the same time pulling her sleeve. The victim, thinking the accused desired money, informed him that she had none and unbuttoned two buttons, possibly in an attempt to prove this fact since it was brought out that Korean women carry their money inside the upper garment. Accused then pointed his carbine at the witness and ordered her to leave the vicinity. Burton, who was still at the guard shack, saw a Korean woman hurry from the general area where the accused had last been seen and run in the direction of the nearby village.

The foregoing testimony remained largely uncontradicted by the accused who at trial testified as follows: That when he came upon the two women he decided to propose intercourse with one; that after having made known his desires, he tendered a five or ten-dollar bill to the victim; that she partially disrobed and commenced the act but before completion expressed reluctance and tried to force him away; that at this point he struck her a number of times about the head with the stock or butt plate of his weapon in anger and in an attempt to frighten her into finishing the act; and that when he saw blood he fled in alarm.

A short time after his departure from the scene of the tragedy, accused returned to his post at the guard shack and related his experience to Burton, informing him he had killed a Korean woman with the butt of his carbine, demonstrating the manner in which he had done so, and displaying blood on the weapon as proof of the fact.

## III

Appellate defense counsel assign as the first error that the evidence is insufficient to sustain the finding of rape. Obviously, the assignment is without merit. Accused during trial judicially admitted an act of in-

**125**

tercourse with the victim, and consequently the only remaining question before the court was whether the act was accomplished by force or fear and without her consent. Although accused offered the only direct evidence on the actual act of intercourse and the contemporaneous behavior of himself and the victim, the court was not obliged to believe his account and could properly infer from other portions of his testimony and that of other witnesses, particularly the victim's companion, that his act was accomplished on a terror-stricken woman against her will by means of brutality and fear. The standard of proof required in a circumstantial evidence case is no higher than in a case proved by the testimony of eyewitnesses and here it is ample. United States v Hurt, 9 USCMA ⋅ 735, 27 CMR 3; United States v Mason, 8 USCMA 329, 24 CMR 139.

In the case at bar there was uncontradicted testimony that the accused, an armed stranger, came upon the victim and her companion and violently disrupted their activity. The kicking of the clothing into the stream, the seizing of the two women, the knocking of the victim into the water, the pointing of the weapon at each, the demand that the victim disrobe, the chasing away of the companion at gunpoint from the vicinity, and the physical abuse of the victim—all were acts which would have induced such fear of personal violence and harm in the mind of the victim that any reasonable person would be hard put even to suspect voluntary acquiescence. Particularly is that true when its remembered that the victim was unable to speak English, was a middle-aged woman and the mother of two children, and was ultimately beaten to death. From the foregoing it should be readily apparent that we have no difficulty concluding there is ample evidence in the record to sustain the finding of rape.

## IV

The second allegation of error is predicated upon the contention that the law officer erred in failing to instruct the court that involuntary manslaughter was a lesser included offense to the charge of felony murder. To dispose of that assertion we must determine whether there was some evidence which reasonably raised an issue of involuntary manslaughter, for if it did not, the failure to so instruct would not constitute prejudicial error. United States v Clark, 1 USCMA 201, 2 CMR 107. In United States v Quisenberry, 1 USCMA 670, 5 CMR 98, we approved the Manual's definition of involuntary manslaughter as "a homicide unintentionally caused in the commission of an unlawful act not inherently dangerous to human life *or* by culpable negligence in performing a lawful act or an act required by law." Since there is no evidence purporting to show culpable negligence in the performance of a lawful act which resulted in the victim's death, the question narrows to whether the accused's actions may reasonably be characterized as unintentional in the commission of an unlawful act not inherently dangerous to human life. We do not believe that under any interpretation of the facts accused's conduct could be brought within the sweep of that rule. It is hornbook law that a person is presumed to have intended the natural and probable consequences of an act intentionally committed by him. Therefore, a suggestion that one who, while poised over another, beats that person a number of times about the head in "butt stroke" fashion with a carbine, does not, at the least, intend to inflict serious bodily harm, is unworthy of consideration.

Appellate defense counsel cite our opinion in United States v Robertson, 5 USCMA 806, 19 CMR 102, to support their contention that an issue of involuntary manslaughter was raised. Suffice it to say we find the circumstances precipitating the attack, the nature of the weapon, and its method of application to the deceased in that instance so different from the case at bar that *Robertson,* supra, can have no bearing on our present determination.

In summation, we believe the follow-

ing statement of the board of review in this case accurately reflects our conclusion on this issue:

". . . As a reasonable alternative the evidence makes out nothing less than unpremeditated murder. Despite appellant's contentions to the contrary we do not believe, either as a matter of fact or law, that any body of fact finders could conclude that involuntary manslaughter was placed in issue. For, if the accused did not entertain an intent to kill, by striking the deceased with a carbine 'butt stroke fashion' in the left temple, he most certainly intended to inflict great bodily harm."

## V

The third assigned error questions the propriety of the board of review's action in affirming a finding of voluntary manslaughter as a lesser included offense of the crime of felony murder. This affirmance was predicated on the board's determination that the law officer had erred when he instructed the court-martial that no specific intent is involved in the offense of murder while attempting to commit rape. Government and defense appellate counsel have submitted lengthy arguments concerning this asserted misstatement of the law and the consequent error allegedly inherent in the action taken by the board of review. We find it unnecessary to rule on these matters for, conceding error *arguendo,* we are convinced the substantial rights of the accused cannot be said to have been prejudiced. In our early case of United States v Bartholomew, 1 USCMA 307, 3 CMR 41, we were faced with a situation in which an accused who was charged with premeditated murder was found guilty by the court-martial of voluntary manslaughter. It was contended the board of review erred in affirming this finding since an essential element of that offense, namely, the "heat of sudden passion," was not evidenced by the record. After noting that both voluntary and involuntary manslaughter were lesser degrees of the crime of murder, a unanimous Court considered the argument set out above and stated:

"It is not necessary, however, that we pass finally on this question. Even if the court-martial in the present case was not justified in finding petitioner guilty of voluntary manslaughter, it did so in fact—and we fail to see how such error could possibly have harmed the accused. The evidence clearly establishes murder. Most jurisdictions of the United States have held that if the evidence warrants conviction in a higher degree of homicide than that found, the appellant may not complain even though the lower degree in fact found is not supported by the evidence." [United States v Bartholomew, supra, page 313.]

The above-quoted language expresses our reasons in disposing of the present issue. The board of review expressly found the evidence clearly sufficient to establish a felony murder and we are convinced the finding of the board is well supported by the record. The error, if any, was one of law and it was not without reason that the board of review in commenting on its affirmance of the lesser incuded offense, characterized the reduction as "a windfall which is more liberal than a strict adherence to the evidence alone would require." Attempted rape is a lesser included offense of rape and under the pleadings, the complex of facts shown by this record, and the findings returned by the court-martial, the board of review could properly have concluded the court members of necessity made the required findings on all the essential elements of both rape and murder in attempting rape. Having received a substantial benefit by the board's ruling, the accused cannot now be heard to say he is the victim of prejudicial error.

## VI

Appellate defense counsel next assign as error the law officer's identification of certain instructions as being given at the request of the defense. Immediately before he instructed on involuntary manslaughter as a lesser included of-

**127**

fense of premeditated murder set out in the first charge, the law officer stated:

"Now the defense has requested certain instructions. These instructions, when given by the law officer, become the instructions of the law officer and are binding upon the court."

Appellate defense counsel base their assertion of prejudicial error on certain language appearing in our opinion in United States v Shaughnessy, 8 USCMA 416, 24 CMR 226, where we stated inter alia that "Any distinction between *sua sponte* instructions and requested instructions has little in law or logic to commend it." While we affirm this principle and have no desire to encourage contrary practice on the part of law officers, we are unable to find wherein the rights of the accused were prejudiced nor does the *Shaughnessy* case compel such a finding. Many aspects of that case differed substantially from the situation presently before us, and reversal there was predicated upon the court's use of the Manual. Moreover, in the instant case the law officer, as noted in the quoted statement, specifically advised the court that once given, requested instructions became those of the law officer and were binding as such upon the court. Finally, it is crystal clear that any possibility of prejudice is dispelled, for accused was acquitted of the charge in connection with which the requested instruction was given. Consequently, we find no merit in appellate defense counsel's argument on this issue.

### VII

The next assignment of error finds its root in the law officer's failure to instruct *sua sponte* on what ▆▆▆▆▆ appellate defense counsel term the affirmative defense of mistake of fact. Both the witness Choi Son-Ni and the accused testified that prior to the commencement of intercourse the victim unbuttoned two buttons on the upper part of her outer garment. Accused also testified that the victim accepted money from him and began the act voluntarily. On the basis of this testimony accused now contends

he was entitled to an instruction on mistake of fact—the fact being the victim's consent. We are of the opinion that appellate counsel seek to broaden the nature of accused's defense at trial. What accused did was to relate a story which, if true, might have caused the court to find the act of intercourse was consensual. He claimed no mistake with regard to the unbuttoning of the garment, the acceptance of the money or the commencement of the act—on the contrary, he vigorously asserted that each episode happened as related and that therefore the victim had not repulsed his sexual advances. In short, the accused's testimony only raised a factual issue of consent which was presented to the court under full and proper instructions and was determined adversely to him. As we concluded in our discussion of the first issue, this finding was supported by substantial evidence, and we find no basis for reversal.

### VIII

The thrust of accused's sixth assignment of error is that the use of the word "presumption" by the ▆▆▆▆ ▆ law officer in certain of his instructions was erroneous and prejudicial. In United States v Ball, 8 USCMA 25, 23 CMR 249, and United States v Miller, 8 USCMA 33, 23 CMR 257, this Court treated substantially the same question at length, and the law therein controls the present issue. In the *Ball* case, the Court, after distinguishing the "presumption of law" from the "justifiable inference," held that the use of the word "presumption" did not, in itself, render an instruction erroneous—that so long as "the court-martial is given adequate tools to apply the instructions on presumptions correctly, there is no error." In United States v Miller, supra, the instructional tool adequate to clarify the word "presumption" as used in the instant case was set out. The primary part of that language as there quoted in our opinion is as follows:

"'. . . You are advised, however, that intent may be proved by circumstantial evidence, that is, by facts and circumstances from which, according to the common experience

of mankind, you may reasonably infer the existence of an intent. Thus the law presumes, and you *would be justified in inferring* that a person must have intended the natural and probable consequences of an act purposely done by him. *The weight, if any, to be given an inference of the accused's intent must of course depend upon the circumstances attending the proved facts which give rise to the inference, as well as all the other evidence in the case. It is for you to make this determination.'* [Emphasis supplied.]"

This same language was used by the law officer in his instructions in the case now before us, and, accordingly, we find no error prejudicial to the accused in this regard. The remaining contention of the accused under ▇▇▇▇▇▇▇ this issue is that the law officer failed to instruct the court-martial that specific intent was a necessary element of an attempt to perpetrate rape with respect to specification 2 of Charge I. Conceding for the purpose of argument that there was a deficiency in that respect, the court-martial, with only one carnal act involved, found the accused guilty of rape and it is difficult for us to conclude it could have returned a finding on the felony murder charge without having concluded the assault immediately preceding and resulting in the killing was with the specific intent to commit the sexual offense. Be that as it may, the board of review held this failure to be prejudicial and accordingly reduced the findings from felony murder to voluntary manslaughter. This reduction was considered in our treatment of the third issue, supra, and requires no further discussion.

IX

The seventh error asserted by appellate defense counsel is based on the board of review's failure to ▇▇▇▇▇▇ order a rehearing on the sentence after reducing the findings to voluntary manslaughter as previously stated. An examination of our prior cases in this area leads us to conclude the board of review acted properly. In United States v Keith, 1 USCMA 442, 4 CMR 34, after citing the Supreme Court's decision in Carter v McClaughry, 183 US 365, 46 L ed 236, 22 S Ct 181, we stated:

". . . We quite agree that if a military judicial agency empowered to do so has determined that the original sentence is appropriate for a single valid conviction in a case involving several specifications, we are powerless to disturb that determination on review."

In our later case of United States v Stene, 7 USCMA 277, 22 CMR 67, we explained the limitations inherent in our opinion in United States v Voorhees, 4 USCMA 509, 16 CMR 83, and noted "It is only in an exceptional case that a board of review will be required to consider granting a rehearing." While the case at bar might be termed "exceptional" on its facts, we conclude it falls outside the ambit of the rule embraced in these cases. When the board of review here had completed its review, the accused stood convicted of rape and voluntary manslaughter. The gravity of these crimes portrays a depraved indifference to violating the chastity and taking the life of the Korean woman. That the board of review, after expressly reassessing the appropriateness of sentence in the light of its findings, should conclude a life sentence proper, is certainly reasonable and in no sense error as a matter of law. As we commented in United States v Stene, supra:

". . . We cannot say they [the remaining offenses] do not constitute a major part both quantitatively and qualitatively of the offenses considered by the court-martial. Such being the case, the board of review did not abuse its discretion in affirming the sentence, and we would exceed our prerogatives if we were to reverse."

X

The final assertion of error posited by appellate defense counsel concerns the correctness of the ▇▇▇▇▇▇ law officer's instruction on sentence. In his charge he stated that if life imprisonment was adjudged, the court should also adjudge

a dishonorable discharge and total forfeitures. This instruction was apparently given in accordance with the same provision contained in paragraph 126a, Manual for Courts-Martial, United States, 1951. In United States v Bigger, 2 USCMA 297, 8 CMR 97, we had occasion to pass on a similar instruction given in connection with a sentence of death, and there held the instruction proper. The Government now contends the same result should follow with respect to a life sentence, urging that in each case the accused has, by sentence, been rendered incapable of performing future military duties, and therefore it is in the best interest of the armed service that his name be stricken from its rolls. In a contrary vein, appellate defense counsel cite this Court's recent decisions in United States v Varnadore, 9 USCMA 471, 26 CMR 251, and United States v Holt, 9 USCMA 476, 26 CMR 256, which held the law officer committed prejudicial error by instructing the court-martial it could not adjudge a sentence of confinement at hard labor for a period greater than six months without imposing a punitive discharge. Even were we to determine that *Holt* and *Varnadore* compel a finding of error in the present case—a question we need not decide—we conclude there was no prejudice to the accused. In both the aforementioned cases the questioned instruction was prompted by an inquiry from the court concerning the permissible sentence which could be imposed, and indicating at least a possibility that a punitive discharge might not have been adjudged but for the instruction. In the case at bar no such inquiry was made, and for obvious reasons we are unable to find even a remote possibility the court members might have seen fit to adjudge a life sentence without the inclusion of a dishonorable discharge and total forfeitures. United States v Horowitz, 10 USCMA 120, 27 CMR 194.

In accordance with the views expressed herein, we find no errors prejudicial to the substantial rights of the accused, and the decision of the board of review is, therefore, affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I dissent to the principal opinion's disposition of the final assertion of error for reasons which will be found in my opinion, concurring in part and dissenting in part, in United States v Horowitz, 10 USCMA 120, 27 CMR 194.