**UNITED STATES**

v.

**Airman First Class Wesley J. CARVER, FR 312–60–5144 United States Air Force.**

**ACM 23139.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 13 Feb. 1981.

Decided 15 Oct. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens, Captain G. Michael Lennon and Michael A. McMurphy, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Richard O. Ely, II.

Before HODGSON, POWELL and MILLER, Appellate Military Judges.

DECISION

HODGSON, Chief Judge:

Contrary to his pleas, the accused was convicted of rape and wrongful use, possession and transfer of marijuana in violation of Articles 120 and 134, 10 U.S.C. §§ 920, 934, Uniform Code of Military Justice.[1] The military judge sentenced him to a dishonorable discharge, eight years confinement at hard labor, forfeiture of all pay and allowances and reduction to airman basic.

---

1. The military judge acquitted the accused of the wrongful possession of amphetamines.

On appeal, as was done at trial, the defense urges that the evidence is insufficient to support the conviction of rape. Therefore, we deem it necessary to relate in some detail the evidence presented.

Airman M., the victim of the rape offense, met the accused in April 1980, and a friendly relationship developed. At the time he was having problems with his wife and his co-workers, and the two friends would meet frequently and exchange confidences. Their acquaintanceship ripened to the point where the accused desired a sexual liaison. When Airman M. said she was not interested in this arrangement, he promised he would never have sexual relations with her unless she consented.

During the early part of September 1980, Airman M. had headaches and was taking medication which caused drowsiness. Because of this side effect, the medicine was usually taken just before bedtime. Also, when mixed with alcohol, this medication tended to make her even more drowsy.

During the evening of 7 September 1980, Airman M. and the accused were together in her room. She drank about a glass of whiskey given her by the accused. At approximately 2000 hours she took her medication and fell asleep on her bed. She woke for a few seconds when her roommate came in looking for a hat.

When she next awoke the accused was on top of her saying "... he was going to make love" to her. The accused began kissing and undressing her; Airman M. fought him until she fell on the floor. She asked him to stop and leave, but once she was on the floor he removed her clothes. She lost consciousness, and when she came to the accused was having sexual relations with her.

The roommate, Airman White, returned at about 0100 hours, and when she entered the room she saw the accused *flagrante delicto*. A few minutes after she left the room, the door opened and the accused was putting on his jacket. Airman M's face was flushed, her eyes swollen and red and she appeared to be crying. Later, the accused asked Airman White to escort him from the building. Eventually, Airman M. told her roommate that the accused had raped her. During the incident Airman M. was wearing a tampon which became so embedded in her vagina that it had to be removed by a doctor. Her recollection of when the assault took place was hazy, but it occurred the same day she went to the hospital to have the tampon removed.

The accused returned to his barracks where he awoke Airman Gagliano, his roommate, relating "... he had broken his promise with Airman M. and felt bad." He indicated he had entered the room, saw her lying on the bed, and had sexual relations with her. Airman Gagliano and Airman M. were also close friends.

The incident did not come to the attention of Airman M's supervisor until October 21, 1980, when she first reported it. Apparently, she decided to report the incident after the accused made an accusation that she was a homosexual.

The defense contends this evidence portrays Airman M. as a confused revenge-seeking individual whose testimony is so inconsistent and error-filled that it is unworthy of belief. They dismiss the testimony of Airman M's roommate and the accused's own roommate as "... equally confused", and as accounts given made by persons having a motive to dislike him. In summary, they urge that "... the proof adduced by the prosecution ... consists of confusion, supported by contradiction, and bolstered by prejudice; (and) certainly not proof beyond a reasonable doubt." We simply do not agree.

We are aware of contradictions in the testimony of the victim, and we are troubled by her failure to report the incident for some forty-three days; but in judging credibility, we recognize that the trial court saw and heard the witnesses. Article 66(c), 10 U.S.C. § 866(c), Code, *supra*. The delay in reporting the incident is but one circumstance that must be considered in determining the credibility of a prosecutrix. Her explanation of the delay is also considered. *Watson v. State*, 219

S.E.2d 763, 235 Ga. 461 (1975). There is ample evidence in the record to establish that the sexual union between the accused and the prosecutrix occurred while she was unconscious. The military rule is if a man engages in sexual intercourse with a female not his wife whom he knows is unconscious, he is guilty of rape, because the act is without her consent. Manual for Courts-Martial, 1969 (Rev.), para. 199a; *United States v. Robertson*, 33 C.M.R. 828 (A.F.B. R.1962); *rev'd. on other grounds* 19 U.S.C. M.A. 324, 34 C.M.R. 108 (C.M.A.1963). Weighing all the evidence and giving due consideration to the findings of the military judge who saw and heard the witnesses we find the evidence establishes the accused's guilt beyond a reasonable doubt.

■ In a supplemental assignment of error the defense contends the government failed to establish that the prosecutrix was not the wife of the accused.[2] The non-marital status between the victim and the accused at the time of the act is an essential element of rape. *United States v. Williams*, 40 C.M.R. 521 (A.B.R.1969). Penetration and the accused's identity are also essential elements that may be established by circumstantial evidence. *United States v. Stephens*, 14 C.M.R. 321 (A.B.R.1954); *United States v. Hunter*, 6 C.M.R. 349 (1954). Further, that standard of proof in a circumstantial evidence case is no higher than one proved by direct evidence. *United States v. Jones*, 10 U.S.C.M.A. 122, 27 C.M.R. 196 (C.M.A.1959). While there is no direct testimony that the accused and the prosecutrix were not husband and wife, there is sufficient circumstantial evidence that they were not. Thus, we find that this element of the offense is established beyond a reasonable doubt. *United States v. Guilford*, 8 M.J. 598 (A.C.M.R.1979); See also *State v. Twyford*, 186 N.W.2d 545, 85 S.D. 522 (1971).

The remaining assignment of error asserts that probable cause was lacking for the issuance of the search authorizations.

Our examination of the record discloses convincing evidence that probable cause existed. This issue is resolved against the accused.

■ One additional facet of this case requires discussion. The military judge ascertained that the accused's written request for a bench trial was understandingly made and he announced on the record that it was "approved". However, he did not sign the DD Form 1722, Request For Trial Before Military Judge Alone, and indicate thereon whether it was approved or disapproved. We consider the military judge's failure to sign the form to be an administrative error not affecting the jurisdiction of the court. *United States v. Campbell*, 47 C.M.R. 965, (A.C.M.R.1973).

For the reasons stated above the findings of guilty and the sentence are

AFFIRMED.

POWELL, Senior Judge, concurs.

MILLER, Judge, absent.

■

---

**2.** Surprisingly, neither the trial counsel nor the military judge ever asked the prosecutrix her marital status.